| | |
|---|---|
| Edward O. Sassower, P.C. (admitted *pro hac vice*) | Michael A. Condyles (VA 27807) |
| Steven N. Serajeddini, P.C. (admitted *pro hac vice*) | Peter J. Barrett (VA 46179) |
| Aparna Yenamandra, P.C. (admitted *pro hac vice)* | Jeremy S. Williams (VA 77469) |
| **KIRKLAND & ELLIS LLP** | **KUTAK ROCK LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | 901 East Byrd Street, Suite 1000 |
| 601 Lexington Avenue | Richmond, Virginia 23219-4071 |
| New York, New York 10022 | Telephone:        (804) 644-1700 |
| Telephone:        (212) 446-4800 | Facsimile:        (804) 783-6192 |
| Facsimile:        (212) 446-4900 | |

*Co-Counsel to the Reorganized Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTELSAT S.A., *et al.*,[1] | ) | Case No. 20-32299 (KLP) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

**JOINT MOTION OF REORGANIZED DEBTORS**
**AND SES TO (I) HOLD IN ABEYANCE THE EXISTING**
**LITIGATION; (II) CLOSE THE REMAINING CHAPTER 11**
**CASES PURSUANT TO 11 U.S.C. §§ 350(A) AND 105 AND FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 3022; (III) TERMINATE STRETTO**
**AS CLAIMS AND NOTICING AGENT; AND (IV) GRANT RELATED RELIEF**

Intelsat S.A. and its three reorganized debtor affiliates that are debtors in pending open chapter 11 cases (collectively, the "Reorganized Debtors"), along with SES Americom, Inc. ("SES" and, collectively with the Reorganized Debtors, the "Parties"), file this joint motion (this "Motion") seeking entry of a final decree, substantially in the form attached hereto as **Exhibit A** (the "Final Decree"), (a) holding in abeyance the Existing Litigation (as defined

---

[1]   Due to the large number of debtors in these chapter 11 cases (the "Debtors"), for which joint administration has been granted, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/intelsat.  The location of the Reorganized Debtors' service address is:  7900 Tysons One Place, McLean, VA 22102.  Capitalized terms used but not otherwise defined herein shall be ascribed the meaning set forth in the Plan or Confirmation Order, as applicable.

herein); (b) closing the four remaining chapter 11 cases of the Reorganized Debtors; (c) terminating Stretto, Inc. f/k/a Bankruptcy Management Solutions, Inc. ("Stretto") as claims and noticing agent; and (d) granting related relief.

### Jurisdiction

1.      The United States Bankruptcy Court for the Eastern District of Virginia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 14, 1984. The Reorganized Debtors and SES confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Motion are sections 105 and 350(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Bankruptcy Rule 3022.

### Relief Requested

4.      By this Motion, the Parties respectfully request entry of a final decree, substantially in the form attached to this Motion as **Exhibit A**, (a) holding in abeyance the Existing Litigation (as defined herein); (b) closing the chapter 11 cases identified on Schedule 1 to the attached Proposed Final Decree (collectively, the "Remaining Cases"); (c) terminating Stretto as claims and noticing agent; and (d) granting related relief.[2]

---

[2]     On June 30, 2022, the Court entered the *Final Decree Closing Certain Chapter 11 Cases Pursuant to 11 U.S.C. § 350(A) and Federal Rule of Bankruptcy Procedure 3022* [Docket No. 4509], closing 31 of 35

**Background**

5.      On May 13, 2020 (the "Petition Date"), Intelsat S.A. and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession (the "Debtors") filed voluntary petitions with the Court under chapter 11 of the Bankruptcy Code.  The Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   On May 15, 2020, the Court entered the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 4] directing joint administration of thirty-five chapter 11 cases under *In re Intelsat, S.A.*, Case No. 20-32299.

6.      On December 17, 2021, the Debtors filed the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Intelsat, S.A. and Its Debtor Affiliates* [Docket No. 3720] (the "Plan"). On the same day, the Court entered the *Order Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Intelsat, S.A. and Its Debtor Affiliates and Approving the Settlement Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 3894] (the "Confirmation Order"), pursuant to which the Court approved the Plan.  The Plan became effective and the Debtors emerged from chapter 11 on February 23, 2022 (the "Effective Date"), as described in the *Notice of Occurrence of the Effective Date of the Fourth Amended Joint Chapter 11 Plan of Reorganization of Intelsat, S.A. and Its Debtor Affiliates* [Docket No. 4279].

7.      On April 30, 2024, SES and Intelsat S.A. entered into a share purchase agreement (as may be amended, amended and restated, or supplemented from time to time, the "Share

---

chapter 11 cases then pending before this Court.  On February 1, 2023, the Court entered the *Final Decree Closing Certain Chapter 11 Cases Pursuant to 11 U.S.C. § 350(A) and Federal Rule of Bankruptcy Procedure 3022* [Docket No. 4564], closing 3 of the remaining 4 chapter 11 cases then pending before this Court.   On September 21, 2023, the Court entered the *Order Granting Joint Motion Regarding Reopening of Certain Chapter 11 Cases* [Docket No. 4585], which reopened the 3 cases that were previously closed on February 1, 2023.

3

Purchase Agreement") whereby SES agreed to acquire 100% of the share capital of Intelsat Holdings S.à r.l.,[3] a direct subsidiary of Intelsat S.A., and certain assets and liabilities of Intelsat S.A. related to Intelsat S.A.'s ownership of Intelsat Holdings S.à r.l. or the operation of Intelsat S.A.'s and its subsidiaries' respective businesses prior to the closing of the transactions contemplated in the Share Purchase Agreement for cash consideration of $3.1 billion (subject to certain potential adjustments) and certain contingent value rights (the "Transaction").  Given the nature of the Parties' businesses, the Transaction is subject to certain regulatory approvals and filings, among other things.  The required regulatory approvals are expected to be received during the second half of 2025 and are a precondition to closing (the "Transaction Closing").   On April 30, 2024, the Parties announced the Transaction publicly.  A copy of the announcement of the Transaction is attached hereto as **Exhibit B**.

8.      The estates are completely administered with the exception of the remaining contested Proofs of Claim Nos. 84, 85, and 103 asserted by SES (the "SES Claims").[4]   The litigation over the SES Claims (the "Existing Litigation," including any future appeals) is currently pending on remand before this Court.  Importantly, the Transaction, once consummated, will obviate the present controversy between the Parties over the SES Claims.  Except for the SES Claims, the Reorganized Debtors represent that there are no other motions, contested matters, or

---

[3]   For the avoidance of doubt, this transaction does not include Reorganized Intelsat S.A.

[4]   On September 30, 2022, this Court issued an opinion (the "Bankruptcy Court Opinion") sustaining the Debtors' objections to the SES Claims.  *See Mem. Op.* [Docket No. 4526].  On October 14, 2022, SES filed a Notice of Appeal [Docket No. 4529] to the U.S. District Court for the Eastern District of Virginia (the "District Court").  On June 22, 2023, the District Court issued an opinion reversing and remanding in part to this Court for further proceedings.  *See SES Americom Inc. v. Intelsat US*, No. 3:22-cv-668 (E.D. Va. June 22, 2023) (memorandum decision).   On September 28, 2023, SES filed its principal brief on remand [Docket No. 4590] and, on November 13, 2023, the Reorganized Debtors filed their principal brief on remand [Docket No. 4592], each in support of SES's and the Reorganized Debtors' positions, respectively.  On December 12, 2023, SES filed its responsive brief on remand [Docket No. 4593] and, on January 12, 2024, the Reorganized Debtors filed their responsive brief on remand [Docket No. 4594].  A hearing in this Court is currently set for July 17, 2024.

adversary proceedings unresolved in the Remaining Cases.  Keeping the Remaining Cases open for the duration of the Transaction Closing would cost the estates significant unnecessary administrative costs.

9.      Accordingly, the Parties have determined and agreed that holding the Existing Litigation in abeyance at least until the earlier of (i) the Transaction Closing (after which the Parties will seek to terminate the Existing Litigation with a withdrawal of the SES Claims) or (ii) the valid termination of the Share Purchase Agreement pursuant to its terms is in the best interests of the Reorganized Debtors' estates.  Moreover, holding the Existing Litigation in abeyance will conserve the Parties' and judicial resources as the controversy will dissolve upon Transaction Closing.  The Parties respectfully request that any order granting this Motion provide that SES, without further order of the Court, shall be permitted upon Transaction Closing to file, and the Clerk shall be required to accept for filing, any pleadings to effectuate a withdrawal with prejudice of the SES Claims without reopening the Remaining Cases.

10.      To the extent that any preconditions to the Transaction Closing are not met (all as further described in the Share Purchase Agreement), or the Share Purchase Agreement is validly terminated pursuant to its terms, and the Transaction is not consummated, either Party may file (and the other Party shall support such filing) or the Parties will jointly file a motion requesting that the Court reopen the Remaining Cases and/or lift the abeyance on the Existing Litigation so as to allow the Court to adjudicate the SES Claims and administer any remaining matters.  Neither Party shall seek to use the request to hold in abeyance the Existing Litigation, nor any delay resulting from such request, in its defense of the Existing Litigation.

## Basis for Relief Requested

**I.      The Court Should Hold in Abeyance the Existing Litigation.**

11.      This Court has authority to hold in abeyance the Existing Litigation under sections 105(a) and 105(d) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code affords the bankruptcy court broad equitable power and provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Such authority has been recognized to extend to bankruptcy courts exercising certain appropriate procedural controls over matters before them.  *See, e.g.*, *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Nov. 2, 2021) (ordering certain procedures governing contested confirmation hearing); *In re Fin. Oversight & Mgmt. Bd. ex rel. Puerto Rico*, No. 17-BK-3283 (LTS) (Bankr. P.R. Aug. 2, 2021) (authorizing the implementation of requested procedures governing the confirmation, discovery, objection, and hearing scheduling processes pursuant to section 105(a) of the Bankruptcy Code); *In re Cumulus Media Inc.*, No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017) (authorizing certain scheduling and discovery procedures regarding the confirmation proceedings pursuant to section 105(a) of the Bankruptcy Code).  In fact, the equitable power provided for in section 105(a) of the Bankruptcy Code "exceeds the equity authority under 'traditional equity jurisprudence.'"  *In re Melhose*, 469 B.R. 694, 710 (Bankr. E.D. Mich. 2012) (quoting *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002)). Further, section 105(d) of the Bankruptcy Code allows the bankruptcy court to "issue an order…prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."  11 U.S.C. § 105(d)(2).

12.      Here, the Court's equitable powers pursuant to section 105 of the Bankruptcy Code also support the Court's ability to hold in abeyance the Existing Litigation.  Each Party has consented to the Court holding the Existing Litigation in abeyance pending the consummation of

6

the Transaction and the Parties agree that doing so is reasonable, necessary, and appropriate given the nature of the Transaction and the circumstances of these chapter 11 cases.  Obtaining the relief requested in this Motion will conserve both judicial and party, including estate, resources by obviating the need to continue adjudicating the Existing Litigation pending Transaction Closing, and Transaction Closing will eliminate the controversy between the Parties in the Existing Litigation.  Accordingly, the Parties request that the Court enter the Final Decree, in accordance with section 105 of the Bankruptcy Code, holding in abeyance the Existing Litigation until the earlier of (i) the Transaction Closing or (ii) the valid termination of the Share Purchase Agreement.

**II.      The Court Should Close the Remaining Chapter 11 Cases Pursuant to Section 350(a) of the Bankruptcy Code and Rule 3022 of the Bankruptcy Rules.**

13.      Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  Bankruptcy Rule 3022, in implementing section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

14.      The term "fully administered" is not defined by either the Bankruptcy Code or the Bankruptcy Rules.  The Notes of the Advisory Committee on the 1991 amendments in respect of Bankruptcy Rule 3022 (the "Advisory Notes") comment that "[e]ntry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed."  The Advisory Notes set forth certain factors that courts should consider when evaluating whether a case has been fully administered.  These factors are:

(a)      whether the order confirming the plan has become final;

(b)      whether deposits required by the plan have been transferred;

(c)      whether the property proposed to be transferred has been transferred;

(d)     whether the debtor or the successor of the debtor has assumed the business or management of the property dealt with by the plan;

(e)     whether payments under the plan have commenced; and

(f)     whether all motions, contested matters and adversary proceedings have been resolved.

*See In re A.H. Robins Co.*, 219 B.R. 145, 150 (Bankr. E.D. Va. 1998) (noting that a number of courts have determined that a case is "fully administered" at a point of "substantial consummation" and examining the concept of "fully administered" in light of the Advisory Notes (citing *Walnut Assocs. v. Saidel*, 164 B.R. 487, 492–93 (E.D. Pa. 1994) and *In re Jordan Mfg. Co.*, 138 B.R. 30, 34 n.1 (Bankr. C.D. Ill. 1992))).

15.     For the reasons set forth herein, the Remaining Cases have been fully administered within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter the Final Decree for the closing of the Remaining Cases:

(a)     the Confirmation Order is final and is non-appealable;

(b)     the Debtors have "substantially consummated" their Plan in accordance with section 1101 of the Bankruptcy Code, the terms of the Plan, and the Confirmation Order;

(c)     The Debtors have transferred their assets to the Reorganized Debtors, formed new corporate entities where applicable, made all distributions on account of funded debt Claims, except for the Disputed and Contingent Claims Reserve, entered into the Exit Facilities, and reviewed and objected to a substantial portion of the Claims; and

(d)     because the Debtors' assets and liabilities vested in the Reorganized Debtors, the administration of all remaining contested matters and the resolution of the Existing Litigation (to the extent the Court needs to do anything more to resolve such claims) can continue to the extent the Parties request that the Court reopen the Remaining Cases.

16.     In addition to the factors identified in the Advisory Notes, courts also have considered whether a plan has been substantially consummated.  See *In re Gates Cmty. Chapel of*

8

*Rochester, Inc.* 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997).  The Bankruptcy Code defines the

term "substantial consummation" as:

> (a)   the transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (b)   assumption by the debtor or by the successor to the debtor under the plan of the business management of all or substantially all of the property dealt with by the plan; and
>
> (c)   commencement of distribution under the plan.

11 U.S.C. § 1101(2).  Here, there has been substantial consummation of the Plan as such term is

defined under section 1101(2) of the Bankruptcy Code.[5]  Substantially all of the Debtors' property

was transferred pursuant to the terms of the Plan and the Reorganized Debtors have made

substantially all distributions on account of Allowed Claims pursuant to the terms of the Plan

(subject to the treatment of any SES Claims, if ultimately allowed, pursuant to the terms of the

Plan and Confirmation Order).

17.    To the extent the Transaction fails to close, issues affecting the resolution of the

SES Claims can be handled by reopening the Remaining Cases, to the extent necessary.  *See A.H.*

*Robins*, 219 B.R. at 150 (stating that the pendency of claims matters does not preclude closing a

debtor's chapter 11 case).  In the unlikely event there is a need to reopen the Remaining Cases, the

---

[5]    *See Chapter 11 Post-Confirmation Report for the Quarter Ending: 03/31/2022* [Docket No. 4465]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 06/30/2022* [Docket No. 4514]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 09/30/2022* [Docket No. 4543]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 12/31/2022* [Docket No. 4566]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 03/31/2023* [Docket No. 4567]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 06/30/2023* [Docket No. 4577]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 09/30/2023* [Docket No. 4596]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 09/30/2023* [Docket no. 4597]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 09/30/2023* [Docket No. 4598]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 09/30/2023* [Docket No. 4599]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 12/31/2023* [Docket No. 4602]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 12/31/2023* [Docket No. 4603]; *Chapter 11 Post-Confirmation Report for the Quarter Ending: 12/31/2023* [Docket No. 4604]; and *Chapter 11 Post-Confirmation Report for the Quarter Ending: 12/31/2023* [Docket No. 4605], each of which is incorporated by reference herein.

Parties will have the ability to do so in order to address specific matters that may arise. Closure of the Remaining Cases will not prejudice any party in interest or otherwise negatively affect the administration of the Debtors' jointly-administered estates.

18.    Closure of the Remaining Cases will allow the Reorganized Debtors to avoid incurring millions of dollars in United States Trustee fees. 28 U.S.C. § 1930(a)(6). Keeping the Remaining Cases open at this point serves no purpose, and entry of the Final Decree will allow the Reorganized Debtors to mitigate costs.

19.    Bankruptcy courts in the Eastern District of Virginia, including this Court, have entered final decrees and closed cases when various claims and contested matters remained pending, and the bankruptcy courts retained jurisdiction over open claims and ongoing adversary proceedings. *See, e.g.*, *In re Pier 1 Imports, Inc.*, Case No. 20-30805 (KRH) (Bankr. E.D. Va. Nov. 18, 2020); *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D. Va. July 2, 2019); *In re Penn Virginia, Corp.*, Case No. 16-32395 (KLP) (Bankr. E.D. Va. Feb. 1, 2018); *In re The Gymboree Corp.*, Case No. 17-32986 (KLP) (Bankr. E.D. Va. Jan. 19, 2018).

20.    The Reorganized Debtors believe that the Remaining Cases have been administered within the meaning of section 350(a), the Debtors have substantially consummated the Plan, and entry of the Final Decree is appropriate at this time for each Remaining Case. Accordingly, the Parties request that the Court enter the Final Decree, in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, closing each of the Remaining Cases but retaining jurisdiction over any and all matters pending in these chapter 11 cases.

**III.    The Court Should Terminate Stretto as the Claims and Noticing Agent.**

21.    The Reorganized Debtors request that the Court terminate Stretto's engagement as the claims and noticing agent. Once the Remaining Cases are closed, Stretto's services will no longer be necessary. Upon termination of its engagement, Stretto shall have no further obligations

to the Reorganized Debtors, the Court, or any other party in interest with respect to it services in the Remaining Cases.

22.    Stretto consents to this Motion, and the Reorganized Debtors will coordinate with Stretto regarding the termination of its services.  The Reorganized Debtors also will coordinate with Stretto and the Court regarding the transfer of copies of all proofs of claim and related registers to the Clerk of the Court, or as otherwise directed by the Court or the Clerk of the Court.

### Notice

23.    The Reorganized Debtors will provide notice of this Motion via first class mail, facsimile, or email (where available) to the Service List in accordance with the Notice Procedures as set forth in the *Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 141].  The Reorganized Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

17.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Parties respectfully request that the Court enter the Final Decree granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  May 6, 2024

/s/  *Jeremy S. Williams*

| | |
|---|---|
| **KUTAK ROCK LLP** | **KIRKLAND & ELLIS LLP** |
| Michael A. Condyles (VA 27807) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Peter J. Barrett (VA 46179) | Edward O. Sassower, P.C. (admitted *pro hac vice*) |
| Jeremy S. Williams (VA 77469) | Steven N. Serajeddini, P.C. (admitted *pro hac vice*) |
| 901 East Byrd Street, Suite 1000 | Aparna Yenamandra, P.C. (admitted *pro hac vice*) |
| Richmond, Virginia 23219-4071 | 601 Lexington Avenue |
| Telephone:     (804) 644-1700 | New York, New York 10022 |
| Facsimile:     (804) 783-6192 | Telephone:     (212) 446-4800 |
| Email:  Michael.Condyles@KutakRock.com | Facsimile:     (212) 446-4900 |
|         Peter.Barrett@KutakRock.com | Email:         Edward.Sassower@Kirkland.com |
|         Jeremy.Williams@KutakRock.com |         Steven.Serajeddini@Kirkland.com |
| |         Aparna.Yenamandra@Kirkland.com |

John O'Quinn, P.C. (admitted *pro hac vice*)
Michael A. Glick (admitted *pro hac vice*)
Emily Merki Long (admitted *pro hac vice*)
1301 Pennsylvania Ave NW
Washington, DC 2004
Telephone:     (202) 389-5000
Facsimile:     (202) 389-5200
Email:         John.OQuinn@Kirkland.com
               Michael.Glick@Kirkland.com
               Emily.Long@Kirkland.com

Michael B. Slade (admitted *pro hac vice*)
Jeffrey J. Zeiger (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         Michael.Slade@Kirkland.com
               Jeffrey.Zeigler@Kirkland.com
               Casey.McGushin@Kirkland.com

*Co-Counsel to Intelsat S.A., Intelsat US LLC, Intelsat License LLC, and Intelsat Jackson Holdings, S.A.*

Dated:  May 6, 2024

/s/  *Dennis T. Lewandowski*

**GIBSON, DUNN & CRUTCHER LLP**
Orin Snyder (admitted *pro hac vice*)
Michael A. Rosenthal (admitted *pro hac vice*)
Justine M. Goeke (admitted *pro hac vice*)
Grace Hart (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166-0193
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035
Email:          OSnyder@gibsondunn.com
                 MRosenthal@gibsondunn.com
                 JGoeke@gibsondunn.com
                 GHart@gibsondunn.com

Helgi C. Walker (admitted *pro hac vice*)
Russell B. Balikian (admitted *pro hac vice*)
Trenton J. Van Oss (admitted *pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:     (202) 955-8500
Facsimile:     (202) 530-9575
Email:          HWalker@gibsondunn.com
                 RBalikian@gibsondunn.com
                 TVanOss@gibsondunn.com

**KAUFMAN & CANOLES, P.C.**
Dennis T. Lewandowski (VA 22232)
Clark J. Belote (VA 87310)
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:     (757) 624-3252
Facsimile:     (888) 360-9092
Email:          dtlewand@kaufcan.com
                 cjbelote@kaufcan.com

*Co-Counsel to SES Americom, Inc.*

**Exhibit A**

**Proposed Final Decree**

Edward O. Sassower, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice)*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:          (212) 446-4800
Facsimile:          (212) 446-4900

Michael A. Condyles (VA 27807)
 Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:          (804) 644-1700
Facsimile:          (804) 783-6192

*Co-Counsel to the Reorganized Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  | ) |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INTELSAT S.A., *et al.*,[1] | ) | Case No. 20-32299 (KLP) |
|  | ) |  |
| Reorganized Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**FINAL DECREE
(I) HOLDING IN ABEYANCE THE
EXISTING LITIGATION; (II) CLOSING THE
REMAINING CHAPTER 11 CASES PURSUANT TO
11 U.S.C. §§ 350(A) AND 105 AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 3022; (III) TERMINATING STRETTO
AS CLAIMS AND NOTICING AGENT; AND (IV) GRANTING RELATED RELIEF**

Upon the joint motion (the "Motion")[2] of Intelsat S.A. and its three reorganized debtor affiliates that are debtors in pending open chapter 11 cases (collectively, the "Reorganized Debtors") along with SES Americom, Inc. ("SES"), for entry of a final decree

---

[1]    Due to the large number of debtors in these chapter 11 cases (the "Debtors"), for which joint administration has been granted, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/intelsat.  The location of the Reorganized Debtors' service address is: 7900 Tysons One Place, McLean, VA 22102.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(this "Final Decree") (a) holding in abeyance the Existing Litigation; (b) closing the Remaining Cases; (c) terminating Stretto as claims and noticing agent; and (d) granting related relief, all as more fully set forth in the Motion; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED:

1.      The Motion is granted.

2.      The Existing Litigation shall be held in abeyance as of the date of this Final Decree.

3.      The Remaining Cases, as identified on **Schedule 1** attached to this Final Decree, are hereby closed.

4.      Entry of this Final Decree is without prejudice to the rights of the Debtors, the Reorganized Debtors, SES, or any other party in interest to seek to reopen the Remaining Cases for good cause shown in accordance with section 350(b) of the Bankruptcy Code, which includes the Parties' failure to consummate the Transaction.

5.      Entry of this Final Decree is without prejudice to the rights, claims, arguments, objections, and the like, if any, of any current or potential parties in interest to any claims or causes of action that are pending in the Remaining Cases as of the date of this Final Decree.  Neither Party shall seek to use the request to hold in abeyance the Existing Litigation, nor any delay resulting from such request, in its defense of the Existing Litigation.

2

6.      If a Transaction Closing occurs, SES, without further order of the Court, shall be permitted to file, and the Clerk is hereby directed to accept for filing, any pleadings to effectuate a withdrawal with prejudice of the SES Claims without reopening the Remaining Cases.  Any such filing shall include a copy of this Order.

7.      The employment of Stretto as claims and noticing agent (in such capacity, the "Claims and Noticing Agent") in these chapter 11 cases is terminated as of the date of this Final Decree.  Stretto is thereby released and discharged as the Claims and Noticing Agent and shall bear not further responsibility in these chapter 11 cases, except that Stretto will box and transport all claims to the Federal Archives, at the direction of the Clerk of the Court.  Stretto may reduce the public case administration website to a static homepage, and in its discretion, may opt to deactivate the website altogether.  Stretto shall keep electronic copies of all records until one (1) year (after which time Stretto may, but is not required to, destroy such records), and Stretto need not keep paper copies of such records.  Stretto may destroy (a) all excess copies of notices, pleadings, plan solicitation documents, customized envelopes, and other printed materials, and (b) all undeliverable and/or returned mail not previously destroyed.  Stretto shall be compensated by the Debtors' estates for the performance of services required hereunder in accordance with the terms of its retention order.

8.      The Court will retain jurisdiction to enforce or interpret its own orders pertaining to the chapter 11 cases.  Further, the Court will retain jurisdiction over any matter pending in the chapter 11 cases.

9.      For the purposes of calculating quarterly fees payable to the Office of the United States Trustee for the Eastern District of Virginia in accordance with 28 U.S.C. § 1930(a)(6), all disbursements made by the four Reorganized Debtors identified on **Schedule 1** up to the date of

3

entry of this Final Decree will be included in the calculation, and the Reorganized Debtors shall pay these amounts promptly. No disbursements made by any of the four Reorganized Debtors identified on **Schedule 1** after the date of entry of this Final Decree will be included in subsequent calculations, and no minimum quarterly fees will be payable in respect of the Remaining Cases for periods after entry of this Final Decree.

10. The Reorganized Debtors and SES are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Decree in accordance with the Motion.


Dated: _____
Richmond, Virginia                          _____
                                            UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/  *Jeremy S. Williams*
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

- and -

Edward O. Sassower, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

*Co-Counsel to the Reorganized Debtors*

/s/  *Dennis T. Lewandowski*
Dennis T. Lewandowski (VA 22232)
Clark J. Belote (VA 87310)
**KAUFMAN & CANOLES, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:        (757) 624-3252
Facsimile:        (888) 360-9092
Email:            dtlewand@kaufcan.com
                  cjbelote@kaufcan.com

- and -

Orin Snyder (admitted *pro hac vice*)
Michael A. Rosenthal (admitted *pro hac vice*)
Justine M. Goeke (admitted *pro hac vice*)
Grace Hart (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone:        (212) 351-4000
Facsimile:        (212) 351-4035
Email:            OSnyder@gibsondunn.com
                  MRosenthal@gibsondunn.com
                  JGoeke@gibsondunn.com
                  GHart@gibsondunn.com

Helgi C. Walker (admitted *pro hac vice*)
Russell B. Balikian (admitted *pro hac vice*)
Trenton J. Van Oss (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.

Washington, DC 20036-5306
Telephone:     (202) 955-8500
Facsimile:     (202) 530-9575
Email:        HWalker@gibsondunn.com
              RBalikian@gibsondunn.com
              TVanOss@gibsondunn.com

*Co-Counsel for SES Americom, Inc.*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

_/s/ *Jeremy S. Williams*_

6

## Schedule 1

**Remaining Cases**

**<u>Chapter 11 Cases to Be Closed</u>**

| Name | Case No. |
| --- | --- |
| Intelsat S.A. | 20-32299 |
| Intelsat US LLC | 20-32298 |
| Intelsat License LLC | 20-32311 |
| Intelsat Jackson Holdings, S.A. | 20-32304 |

**Exhibit B**

**Announcement of the Transaction**

⊕ EN          🔍          ☰

Home / Company / News / Press Releases / SES to acquire…

## SES to acquire Intelsat in compelling transaction focused on the future



Press Release      |      30 Apr 2024      |      8 min read

f      𝕏      in      ⤴

- *Value accretive transaction underpinned by €2.4 billion (NPV) of readily executable synergies.*
- *Creating a stronger multi-orbit operator with ~60% of revenue in high growth segments.*
- *Enhances competitive offerings to deliver customer value through segment-relevant solutions.*
- *Expanded cash flows, profitable growth outlook, & strong balance sheet drive total shareholder return.*

Luxembourg and McLean, VA, 30 April 2024 -- SES S.A. ("SES") and Intelsat S.A. ("Intelsat") announce an agreement for SES to acquire Intelsat through the purchase of 100% of the equity of Intelsat Holdings S.a.r.l. for a cash consideration of $3.1 billion (€2.8 billion) and certain contingent value rights. The combination will create a stronger multi-orbit operator with greater coverage, improved resiliency, expanded suite of solutions, enhanced resources to profitably invest in innovation, and benefit from the collective talent, expertise, and track record of both companies.

The combination will deliver greater value for customers and partners, as well as providing a compelling alternative in the new era of growth, innovation, and competition for the satellite communications industry.

The transaction, which is subject to relevant regulatory clearances/filings and customary provisions concerning cooperation and measures in seeking such regulatory clearances, which are expected to be received during the second half of 2025, is fully supportive of SES's financial policy and is underpinned by expected total synergies equivalent to 85% of the total equity value of the transaction. The transaction has been unanimously approved by the Board of Directors of both companies and Intelsat shareholders holding approximately 73% of the common shares have entered into customary support agreements requiring them to vote in favour of the transaction.

Case 20-32299-KLP    Doc 4838    Filed 05/06/24    Entered 05/06/24 18:34:04    Desc Main
Document    Page 25 of 30

**Transaction highlights**

- Delivers €2.4 billion (NPV) of synergies (85% of equity consideration) with 70% executed within 3 years after closing.
- Expands multi-orbit satellite-based capabilities, spectrum portfolio, and global ground network to serve customers.
- Increases revenue in high demand and growing Networks segments representing ~60% of expanded revenue base.
- Combines complementary investment in space, ground, and network innovation to unlock future value and opportunity.
- Brings together a wealth of collective talent, expertise, engineering knowledge, and go-to-market capabilities.
- Company( ) will benefit from gross backlog of €9 billion, revenue of €3.8 billion, and Adjusted EBITDA of €1.8 billion.
- Medium-term Adjusted EBITDA growth driving future free cash flow (FCF) generation outlook.
- Commitment to investment grade metrics with net leverage below 3 times within 12-18 months after closing.
- Commitment to annual dividend of €0.50 per A-share with expanded FCF base supporting potential for future increases.

**Adel Al-Saleh, CEO of SES, commented:** "This important, transformational agreement strengthens our business, enhances our ability to deliver world-class customer solutions, and generates significant value for our shareholders in a value accretive acquisition which is underpinned by sizeable and readily executable synergies.

In a fast-moving and competitive satellite communication industry, this transaction expands our multi-orbit space network, spectrum portfolio, ground infrastructure around the world, go-to-market capabilities, managed service solutions, and financial profile. I am excited by the opportunity to bring together our two companies and augment SES's own knowledge base with the added experience, expertise, and customer focus of the Intelsat colleagues.

Going forward, customers will benefit from a more competitive portfolio of solutions with end-to-end offerings in valuable Government and Mobility segments, combined with value-added, efficient, and reliable offerings for Fixed Data and Media customers. This combination is also positive for our supply chain partners and the industry in creating new opportunities as satellite-based solutions become an increasingly integral part of the wider communications ecosystem.

Our expanded business will deliver sustained EBITDA growth and strong cash generation, in turn supporting incremental profitable investment in capabilities and solutions to fulfil rapidly expanding and evolving customer demand while also delivering sustained returns to shareholders."

**David Wajsgras, CEO of Intelsat, commented:** "Over the past two years, the Intelsat team has executed a remarkable strategic reset. We have reversed a 10-year negative trend to return to growth, established a new and game-changing technology roadmap, and focused on productivity and execution to deliver competitive capabilities. The team today is providing our customers with network performance at five 9s and is more dedicated than ever to customer engagement and delivering on our commitments. This strategic pivot sets the foundation for Intelsat's next chapter.

By combining our financial strength and world-class team with that of
SES, we create a more competitive, growth-oriented solutions provider in
an industry going through disruptive change. The combined company
will be positioned to meet customers' needs around the world and
exceed their expectations."

*All financial information in this press release is stated using a foreign
exchange (FX) rate of €1: $1.09. Pro forma (combined) revenue and gross
backlog is adjusted to eliminate intercompany transactions. Pro forma
leverage is after acquisition costs including related fees. The financial
outlook assumes nominal satellite launch schedule and nominal satellite
health status. Net Present Value (NPV) of expected synergies includes
expected realisation costs. Further information regarding the financial
information presented is provided below.*

Overview of the transaction

On closing of the transaction (subject to receipt of relevant regulatory
clearances and other relevant requirements expected during the second
half of 2025), SES will pay $3.1 billion (€2.8 billion) to acquire 100% of the
equity of Intelsat Holdings S.a.r.l. in a transaction which implies an
Enterprise Value of $5.0 billion (€4.6 billion). The transaction will be
financed from existing cash and equivalents (which stood at €2.4 billion
on 31 March 2024) and the issuance of new debt, including hybrid bonds.
Additionally, SES will issue contingent value rights in respect of a portion
of any potential future monetisation of the combined collective usage
rights for up to 100 MHz of C-band spectrum.

Prior to closing, both company's existing management teams will
maintain their focus on executing against their respective near-term
business and financial objectives, as well as closing of the transaction.

The combined SES will continue to be headquartered and domiciled in
Luxembourg, while maintaining significant presence in the U.S., notably
in the greater Washington, D.C. area.

Highly accretive acquisition

The transaction will be free cash flow accretive to SES from Year 1 and
brings together two trusted operators with a combined gross contract
backlog of €9 billion, growth-oriented portfolios concentrated on
Networks segments with expanding demand, shared vision of delivering
seamless end-to-end customer solutions, and complementary
investment in innovation, while also sharing strong balance sheet metrics
and long-term cash generation fundamentals.

By integrating the two companies, SES expects to deliver synergies with
a total net present value (NPV) of €2.4 billion (after approximately €155
million of estimated realisation costs), representing an annual run rate of
€370 million of which approximately 70% is anticipated to be executed
within 3 years after closing of the transaction. The NPV of the synergies
is equivalent to 85% of the total equity value of the transaction, while
opportunities to realise further synergies will be explored before and
after closing.

Most of the synergies are expected to be executed from the combination
of selling, general, and administrative savings as well as optimisation of
third-party capacity costs and future efficiencies in procurement. The

remaining synergies will be captured from optimising the combined satellite fleets and ground infrastructure with the process expected to start soon after closing.

**Creating a stronger multi-orbit operator in the new market landscape**

Bringing together these two companies, with the associated synergies, will create a stronger multi-orbit operator better able to compete in a fast-moving satellite communications landscape and respond to the evolution of competing communications technologies.

With a combined fleet of more than 100 Geostationary Earth Orbit (GEO) and 26 Medium Earth Orbit (MEO) satellites, the combined SES will benefit from enhanced coverage, greater network resiliency, complementary spectrum (C-, Ku-, Ka-, Military Ka-, X-band, and Ultra High Frequency) rights, and improved service delivery utilising an expanded network of ground segment assets.

By end-2026, 8 new GEO (including 6 software-defined) satellites and 7 new MEO (O3b mPOWER) satellites are expected to be launched adding further redundancy and additional growth capacity.

On a pro forma basis, Government, Mobility, and Fixed Data segments with expanding customer demand for reliable, high-performance connectivity solutions anywhere on land, at sea, or in the air will represent around 60% of SES's total expanded revenue base of €3.8 billion, underpinning the group's orientation to valuable growth segments.

The integrated company will have a stronger financial profile compared with the standalone SES, with combined gross backlog of €9 billion (on 31 December 2023) underpinning future cash flow visibility, expected Adjusted EBITDA of €1.8 billion (year ended 31 December 2024) demonstrating robust profitability, and expected Adjusted EBITDA less CapEx of €0.8 billion (year ended 31 December 2024) supporting recurring cash generation fundamentals.

In turn, the stronger financial profile enhances the ability to better invest in future network infrastructure, customer solutions, and future use-cases and/or business diversification opportunities with a better risk profile, than could be done by the two companies on a standalone basis.

**Strengthening competitive positioning with enhanced customer solutions**

With the creation of a stronger multi-orbit operator, customers across Government, Mobility, Fixed Data, and Media segments will benefit from an expanded set of capabilities and solutions which will enable them to expand their network reach, add further resiliency, improve productivity across their operations, and bring world-class experiences to their end-users.

The combined company will be able to better meet growing Government demand for secure, reliable, and high-performance connectivity for a wide range of mission-critical applications. Customers will benefit from the integrated, multi-orbit solutions of both companies and their expertise in delivering trusted services for some of the most demanding government agencies and missions around the world.

In Mobility, customers will be better served from bringing together the two companies' complementary offerings, notably Intelsat's commercial aviation division which today is serving nearly 3,000 connected aircraft, and SES's maritime business which includes supporting five major cruise line operators via fully managed, multi-orbit connectivity agreements. The combination will also support the evolving needs of channel partners across the segments.

In Fixed Data, customers will be able to take advantage of the combined company's expanded multi-orbit network coverage, complementary innovations in software-defined delivery, and competitive offerings capable of seamless integration with cloud and 5G applications. Both companies have a proven record serving the requirements of major telecommunications companies, mobile network operators and cloud service providers in this growth segment.

In Media, the transactions brings together complementary capabilities for customers including pay-TV operators, free-to-air/free-to-view platforms, public and private broadcasters, and sports & events brands who will have access to global audience reach with improved redundancy features via a competitive range of broadcast solutions, plus additional value-added services.

**Building sustained total shareholder return**

Based on the 2024 financial outlook, the combined company is expected to generate approximately €3.8 billion in annual revenue (after adjusting for intercompany eliminations) and is expected to deliver low- to mid-single digit average annual growth over the medium-term. Growth will be driven by the combination of high growth Government, Mobility, and Fixed Data businesses, anchored by a Media business with solid cash generation fundamentals, despite contracting capacity demand in mature markets due to expansion of terrestrial broadband networks and changing consumer viewing habits against which the combined company will be better positioned to compete.

Including the benefit of OpEx synergies, 2024 pro forma Adjusted EBITDA of approximately €1.8 billion is expected to increase by a mid-single digit average annual growth rate. Adjusted EBITDA includes around €175 million of Intelsat non-cash revenue.

The two companies are expected to invest combined CapEx of approximately €1 billion in 2024, with an average of €600-650 million per annum for the period 2025-2028 including synergies. The combination of growing EBITDA and decreasing CapEx will support future free cash flow expansion, supporting future investment in innovation and shareholder returns.

The transaction is expected to deliver an internal rate of return of more than 10%. On closing, Adjusted Net Debt to Adjusted EBITDA is forecast to be around 3.5 times before reducing to below 3 times within 12-18 months after closing, consistent with SES's commitment to maintain investment grade balance sheet metrics. SES will maintain an annual base dividend of €0.50 per A-share (€0.20 per B-share) with a stable to progressive dividend policy.

Guggenheim Securities acted as lead financial advisor to SES. Morgan Stanley acted as co-financial advisor. Deutsche Bank Securities Inc also

acted as a financial advisor. Morgan Stanley & Co LLC and Deutsche Bank AG, Filiale Luxembourg are providing committed financing for the transaction. Both Guggenheim Securities and Morgan Stanley & Co LLC rendered a fairness opinion to SES's Board of Directors. Gibson, Dunn & Crutcher, Arendt & Medernach, Hogan Lovells, and Freshfields served as legal counsel to SES.

PJT Partners served as financial advisor to Intelsat and rendered a fairness opinion to the Intelsat S.A. Board of Directors. Skadden, Arps, Slate, Meagher & Flom, and Elvinger Hoss Prussen served as legal counsel to Intelsat.

**Financial information presented in this press release**

Accounting recognition and measurement principles: SES financial information presented using the recognition and measurement principles of International Financial Reporting Standards (IFRS). Intelsat financial information uses those of U.S. Generally Accepted Accounting Principles (GAAP). The financial information presented for SES and Intelsat does not apply a consistent set of accounting policies.

Currency conversion: all financial numbers based on an assumed foreign exchange (FX) rate of €1: $1.09. Pro forma financial information are aggregations of the corresponding SES and Intelsat financial information, adjusted for the elimination of material intra-group transactions. Financial Outlook information is conditional on nominal satellite health and nominal launch schedule.

The following Additional Performance Metrics (APMs) are used: "Adjusted EBITDA" is reported EBITDA excluding significant special items as defined by SES and Intelsat respective managements, including (but not necessarily limited to) reorganisation costs and the impact of U.S. C-Band repurposing; "Gross Debt" represents current and non-current borrowings plus 50% of perpetual hybrid bonds; "Adjusted Net Debt" represents current and non-current borrowings plus 50% of perpetual hybrid bonds, less cash & cash equivalents; "Net Leverage" refers to Adjusted Net Debt divided by Adjusted EBITDA; "Capital Expenditure (CapEx)" represents net cash absorbed by investing activities excluding acquisitions, financial investments, and U.S. C-band repurposing; and "Gross Backlog" represents expected future revenue under existing customer contracts and includes both cancellable and non-cancellable contracts

**For further information please contact:**

Richard Whiteing
SES Investor Relations
Tel: +352 710 725 261
richard.whiteing@ses.com

Suzanne Ong
SES External Communications
Tel: +352 710 725 500
suzanne.ong@ses.com

Clay McConnell
Intelsat Communications

Tel +1 571 419 9305

Clay.mcconnell@Intelsat.com

---

Presentation for investors and analysts:

---

Follow us on

---

About SES

---

About Intelsat

---

Forward looking statements

---

Additional Information and Where to Find It

---

No Offer or Solicitation

---